UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JOAO BOCK TRANSACTION SYSTEMS LLC,  :
: Civil Action Number
                   Plaintiffs, : 03 Civ. 10199 (WWE)
:
    -against- :
:
SLEEPY HOLLOW BANK and : **REVISED ANSWERS TO DEFENDANTS'**
JACK HENRY & ASSOCIATES, INC. : **THIRD SET OF INTERROGATORIES**
:
                  Defendants. :
-------------------------------------------------------------x

      Plaintiff hereby serves revised answers to Defendants' Third Set of Interrogatories, pursuant to Rule 33(b) of the Federal Rules of Civil Procedure.

      INTERROGATORY NO. 17. (41): Set forth in detail any and all damages you claim to have incurred as a result of the infringement alleged in your Second Amended Complaint. If you claim entitlement for a reasonable royalty, state what you contend is a reasonable royalty for a person to practice the art disclosed in your '725 patent, and the factual basis for your contention.

      Answer: Plaintiff's damages include a reasonable royalty, trebled for Defendant's willful infringement of the '725 patent, attorneys fees, and costs and expenses incurred in prosecuting this lawsuit.

      Defendant Jack Henry & Associates, Inc.:

      Plaintiff has incurred damages in the amount of a reasonable royalty on all revenues derived by Defendant Jack Henry & Associates, Inc. ("JHA") for licenses sold and products and services sold or provided in connection with its making, using, selling, offering to sell, and/or advertising, the infringing products and services, adjusted for pre-judgment interest. Plaintiff seeks treble damages for JHA's willful infringement of the 725 Patent. Plaintiff's damages also include its attorneys' fees and the expenses and costs incurred in prosecuting this action.

Plaintiff claims entitlement to a reasonable royalty of 5.7% from JHA on all of its revenues realized, since November 15, 2003, from software licenses and on all revenues realized from support and service fees, which include implementation services. The factual basis for the reasonable royalty rate of 5.7% is provided below using the pertinent factors set forth by the Court in *Georgia-Pacific Corporation v. United States Plywood Corp.,* 318, F. Supp, 1116, 1120 (S.D.N.Y. 1970).

1. The established profitability of the product made under the patent, its commercial success, and its current popularity. JHA acknowledges on its web site that customers demand Internet Banking, and it prominently discusses its products and/or services which allow a customer of a JHA licensee bank, credit union, or other financial institution, to place a "Stop Payment" via the Internet or a web site and its products and/or services which provide an alert to a customer that a transaction is taking place or has taken place regarding his/her/its account. These products and services are needed for JHA to compete in its market. JHA has recognized that it must provide these services for little or no additional fee, and therefore, it rolls the fees for same into its entire product offering charges, just to remain competitive in the marketplace.

2. JHA's infringing products and services provide utility and advantages over older modes or devices, by providing such a customer with the ability to communicate with his/her/its respective bank, credit union, or other financial institution, on a 24/7 basis, to communicate stop payment requests and to receives alerts, periodic statements, etc, from any computer or device which can access the Internet.

3. JHA has made use of the invention in order to remain competitive and viable in its marketplace. Further, JHA's unauthorized use of the invention has resulted in significant profits and significant profit margins.

In the first six months of Fiscal Year 2010, JHA had Licensing revenues of $23,415,000, a gross Licensing profit of $21,204,000, and a gross Licensing profit margin of 91%. In the first six months of Fiscal Year 2010, JHA had Support and Service revenues of $340,069,000, a gross Support and Service profit of $205,836,000, and a gross Support and Service profit margin of 52%.

In Fiscal Year 2009, JHA had Licensing revenues of $58,434,000, a gross Licensing profit of $51,549,000, and a gross Licensing profit margin of 88%. In Fiscal Year 2009, JHA had Support and Service revenues of $614,242,000, a gross Support and Service profit of $228,405,000 and a gross Support and Service profit margin of 37%.

In Fiscal Year 2008, JHA had Licensing revenues of $73,553,000, a gross Licensing profit of $66,855,000, and a gross Licensing profit margin of 91%. In Fiscal Year 2008, JHA had Support and Service revenues of $580,334,000, a gross Support and Service profit of $216,194,000 and a gross Support and Service profit margin of 37%.

In Fiscal Year 2007, JHA had Licensing revenues of $76,403,000, a gross Licensing profit of $72,126,000, and a gross Licensing profit margin of 94%. In Fiscal Year 2007, JHA had Support and Service revenues of $503,317,000, a gross Support and Service profit of $191,179,000 and a gross Support and Service profit margin of 38%.

In Fiscal Year 2006, JHA had Licensing revenues of $84,014,000, a gross Licensing profit of $81,297,000, and a gross Licensing profit margin of 97%. In Fiscal

Year 2006, JHA had Support and Service revenues of $425,661,000, a gross Support and Service profit of $153,278,000 and a gross Support and Service profit margin of 36%.

In Fiscal Year 2005, JHA had Licensing revenues of $82,374,000, a gross Licensing profit of $76,827,000 and a gross Licensing profit margin of 93%. In Fiscal Year 2005, JHA had Support and Service revenues of $364,076,000, a gross Support and Service profit of $119,979,000, and a gross Support and Service profit margin of 33%.

In Fiscal Year 2004, JHA had Licensing revenues of $62,593,000, a gross Licensing profit of $57,855,000 and a gross Licensing profit margin of 92%. In Fiscal Year 2004, JHA had Support and Service revenues of $311,287,000, a gross Support and Service profit of $103,557,000, and a gross Support and Service profit margin of 33%.

4. Plaintiffs seek a reasonable royalty of 5.7% of the entire market value of all revenues JHA derived from its Licensing and Support and Service revenues. Plaintiff relies on *NTP, Inc. v. Research In Motion, Ltd.*, No. 3:01 Cv 767 (E.D. Va). In *NTP*, the infringing products and services involved telecommunication services and messaging, which are analogous to the infringing products and services in this case. The *NTP* case is a recent case involving technologies and inventions analogous to the infringing products and services and, therefore, Plaintiff relies on the reasonable royalty rate of 5.7% of all revenues derived by JHA for all products and services which provide the infringing products and services.

Plaintiff bases its damages on the entire market value of the revenues JHA received for its Licensing and Support and Service business activities because the features of JHA's products and services covered by the '725 patent are the basis for customer demand for JHA's products and services. JHA advertises its Stop Payment and

4

Alert features prominently on its web site and in marketing materials it provides to customers for their marketing activities.  The invention of the '725 patent covers, among other things, Internet banking products and services that JHA acknowledges on its web site is demanded by customers of banks.  To be competitive and maintain its market share, JHA must provide the Internet Banking products and services that are the subject of the '725 patent.  The JHA products and services also include marketing material regarding other patented features of the '725 patent on its web site, such as core processing functionality, including, for example, processing deposits, withdrawals, and drafts (bill pay), *etc.*, (*e.g.* Claim 280), Stop Payments and transaction processing (see *e.g.* Claim 108), and alerts (*e.g.* Claims 109 and 267), viewing account statements (*e.g.* Claim 293), etc., which products and services, covered under the '725 patent, form additional basis for JHA's marketing efforts and those of their client banks, credit unions, or other financial institutions.  Indeed, the patented features of the '725 patent form the basis for the consumer demand for JHA's products and services.  JHA must offer these patented products and services to be able to remain in business, and these patented products and services are the basis for consumer demand for JHA's Licensing and Support and Service products and services and, therefore, the entire market value of all Licensing and Support and Service revenues derived by JHA.  Simply put, JHA would be out of business if it did not offer the patented products and services, as they acknowledge, consumers demand them.

Plaintiffs' damages include 5.7% of all License and Support and Service revenues of Defendant Jack Henry & Associates as follows:

| Fiscal Year | Period | Licensing and Service and Support Revenues |
|---|---|---|
| 2010 (six months) | July 1, 2009—Dec. 31, 2009 | $363,484,000 |
| 2009 | July 1, 2008—June 30, 2009 | $672,676,000 |
| 2008 | July 1, 2007—June 30, 2008 | $653,887,000 |
| 2007 | July 1, 2006—June 30, 2007 | $579,720,000 |
| 2006 | July 1, 2005—June 30, 2006 | $509,675,000 |
| 2005 | July 1, 2004—June 30, 2005 | $446,450,000 |
| 2004 | Dec. 1, 2003—June 30, 2004 | $218,096,666[1] |
| Total entire market value revenues | | **$3,443,988,666** |
| Royalty for past infringement to Dec. 31, 2009 | | $196,307,353[2] |
| Damages Trebled for Defendant's Willful Infringement | | **$588,922,059** |

Alternate Damage Theory:

If JHA can prove that its License and Support and Service revenues derived from offerings including the infringing products and services, such as by providing full and complete answers to Plaintiffs' Interrogatories Nos. 18, 19, and 23, are less that the amounts provided in the SEC filings, then Plaintiffs will assert an alternate damages theory based on the entire market value of revenues derives from License and Support and Service revenues derived by Defendant Jack Henry & Associates from providing products and services which include the infringing products and services.

---

[1] 7/12 x $373,880,000.
[2] 0.057 x $3,443,988,666.

Defendant Sleepy Hollow Bank:

Plaintiff has incurred damages in the amount of a reasonable royalty for use of the bank's core processing system, which included the Stop Payment function of NetTeller by Defendant Sleepy Hollow Bank ("SHB").  Since SHB ceased providing the NetTeller Stop Payment function in its Internet Banking offerings, Plaintiff seeks a reasonable royalty from SHB equal to 5.7% of approximately $1/6^{th}$, the *pro rata* amount for the time period November 2003 to January 2004, of $9,000.00, which is the amount which Plaintiffs believe that SHB paid to JHA for its annual license.  Plaintiffs are awaiting and additional information from JHA.

Plaintiff's Attorneys Fees and Expenses:   As of February 8, 2010:  760 hours at $350/hour = $266,000 plus expenses of $5,564.42.

INTERROGATORY NO. 19. (43): Identify all damages you claim to have suffered as a result of the alleged infringement.

Answer:  Plaintiffs' damages include a reasonable royalty, trebled for Defendant's willful infringement of the '725 patent, attorneys fees, and costs and expenses incurred in prosecuting this lawsuit, as provided in the Answer to Interrogatory No. 17. (41), which answer is incorporated by reference herein.

Dated: New York, New York
       February 15, 2010

FRIED & EPSTEIN LLP

By *John W. Fried*
John W. Fried (JF-2667)

Empire State Building
350 Fifth Avenue, Suite 7612
New York, New York 10118
(212) 268-7111

*Attorneys for Plaintiff*

## DECLARATIONS

I, Raymond Anthony Joao, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that I am a member of the limited liability company, which is the Plaintiff in this matter, and that the foregoing Revised Answers to Defendants' Third Set of Interrogatories are true, correct, and accurate to the best of my knowledge and belief. Executed this 14th day of February 2010, in Westchester County, New York.

_____
Raymond Anthony Joao

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing Plaintiff's Revised Answers to Defendants' Third Set of Interrogatories on February 16, 2010, by First Class U.S. Mail to Defendants' attorneys of record:

Russell S. Jones, Jr., Esq.
Polsjnelli Shughart P.C.
Twelve Wyandotte Plaza
120 West 12th Street
Kansas City, MO 64105

*[signature: John W. Fried]*

—————————————
John W. Fried (JF 2667)

*Attorney for Plaintiff*