# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOAO BOCK TRANSACTION SYSTEMS LLC, | § § § | |
| Plaintiff, | § § | |
| -against- | § § | Civil Action No. 03 Civ. 10199 (KMK) |
| SLEEPY HOLLOW BANK and JACK HENRY & ASSOCIATES, INC. | § § § § | |
| Defendants. | § § | |

## <u>PLAINTIFF'S POST-TRIAL MEMORANDUM</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

II.   THE TRIAL TESTIMONY AND JURY INTERROGATORIES…………………………...2

III..........................................................................................................LAW AND ARGUMENT
5

   A.   Plaintiff Has Established Infringement By a Preponderance of the Evidence………..……5

      i.   Plaintiff Has Met Its Burden of Proving Infringement of Each Asserted Patent Claim…..5

      ii.  Defendant Did Not Rebut Plaintiff's Evidence Establishing Infringement………………5

            a.   For Claim 108, the Jury Should Have Found That Plaintiff Has Proven That a
            Stop Payment Request Is A "Limitation Or Restriction" That "Prohibits The Use
            Of" Or "Prohibits A Withdrawal From" A Checking Account, and That the
            Jack Henry Product Includes Every Element of the Claimed Apparatus……………..6

            b.   For Claim 109, The Jury Should Have Found That Plaintiff Has Proven That
            Jack Henry's System Transmitted A Second Signal Containing Information
            Regarding The Banking Transaction…………………………………………………7

      iii. Defendant Did Not Rebut Plaintiff's Evidence Establishing Infringement Under the
      Doctrine of Equivalents……………………………………………………………………9

      iv.  Defendant's Multiple-Actor Argument Under *Muniauction* Fails As a Matter of Law…...9

   B.   Defendant Has Failed to Prove Invalidity by Clear and Convincing Evidence…………..10

      i.   The Preamble of Each of the Claims-in-Suit Is A Limitation ...………………………...11

      ii.  Defendant Has Presented No Sufficient Evidence of Invalidity by an Anticipating
      Reference………………………………………………………………………………12

      iii. Defendant Has Presented No Sufficient Evidence of Invalidity Based on Obviousness..13

      iv.  Defendant Has Not Presented Clear and Convincing Evidence That the '725 Patent Is
      Invalid Based on Defendant's Priority Date Theory………………………………………...14

            a.   Defendant Cannot Meet Its Clear and Convincing Burden With Documents
            Alone………………………………………………………………………………15

            b.   Defendant Has Failed to Prove Invalidity Based on a Failure to Meet the
            Disclosure Requirements of 35 U.S.C. § 112………………………………………..16

v.     Defendant Cannot Prove Invalidity Based on the Expert Testimony of John Fulton…………………………………………………………………………………...17

C.  The Jury Verdict Cannot Stand Because It Is Inconsistent and Contradictory ................... 18

i.  The Jury's Answers to Interrogatories III and IV Are Evidence of Inconsistent Findings and Jury Confusion ........................................................................................... 19

D.  Improper Testimony Was Heard by the Jury ..................................................... 20

i.     Jury Interrogatory I Was  Improper ............................................................... 20

ii.  Testimony from Raymond Joao on Issues of Validity and Infringement Was Improper…………………………………………………………………………………24

iii.  Jury Interrogatory II  Was Improper .......................................................... 26

E.  Presumptions in Plaintiff's Favor Were Disregarded ......................................... 28

IV.  CONCLUSION............................................................................................ 29

# TABLE OF AUTHORITIES

<u>CASES</u>

*Acoustical Design, Inc. v. Control Elecs. Co.,* 932 F.2d 939 (Fed. Cir. 1991)………………21,25

*Advanced Tech. Incubator, Inc. v. Sharp Corp. et al.,* 2010 U.S. Dist. LEXIS 30832
    (E.D. Tex. Mar. 22, 2010)……………………………………………………………….22

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.* 725 F.2d 1350, 1359 (Fed. Cir.1984)...28,29

*Autogiro Co. of Am. v. United States,* 384 F.2d 391 (Ct. Cl. 1967)……………………………...26

*Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615
    (Fed. Cir. 1995)………………………………………………………………………..26

*BMC Resources Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007)…………………...9,10

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368 (Fed. Cir. 2001)………..12,13

*Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361 (Fed. Cir. 2005)……………………………17

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002)…………11,26

*Centricut, LLC v. The Esab Group, Inc.*, 390 F.3d 1361 (Fed. Cir. 2004)………………………15

*Civix-DDI, LLC v. Cellco P'ship*, 387 F.Supp.2d 869 (N.D. Ill. 2005)…………………………10

*Corning Glass Works v. Sumitomo Elec., U.S.A.*, 868 F.2d 1251 (Fed. Cir. 1989)……………...11

*Creative Internet Adver. Corp. v. Yahoo! Inc.*, 2009 U.S. Dist. LEXIS 65669
    (E.D. Tex. July 30, 2009)………………………………………………………………5

*Cummins-Allison Corp. v. SBM Co.*, 2009 WL 4017160 (E.D. Tex. Nov. 13, 2009)…………..5,6

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (en banc)………………...18,26

*Cytologix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168 (Fed. Cir. 2005)…………………...28

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)………………………20,22

*Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040 (Fed. Cir. 1997)...28

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288 (Fed. Cir. 2009)………………………15

*General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978 (Fed. Cir. 1997)………………………...5

*Hearing Components, Inc. v. Shure, Inc.*, Civil Action No. 9:07-CV-104, 2009 WL 593836 (E.D. Tex. Mar. 6, 2009)……………………………………………………………..15,16,18

*In re Deters*, 515 F.2d 1152 (CCPA 1975)…………………………………………………………25

*In re Hayes Microcomputer Prods. Patent Litig.*, 982 F.2d 1527 (Fed. Cir. 1992)……………..16

*In re Kahn*, 441 F.3d 977 (Fed. Cir. 2006)…………………………………………………………14

*Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363 (Fed. Cir. 2008)…………………………13,14

*Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565 (Fed. Cir. 1986)………………………..24

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142 (Fed. Cir. 2004)…………...15,17,18

*Kosmynka v. Polaris Industries, Inc.*, 462 F.3d 74 (2d Cir. 2006)………………………………19

*KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007)……………………………………………...14

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)……………………………………….......20

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)…………………………26

*Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363 (Fed. Cir. 2009)…………………14

*Mattivi v. S. African Marine Corp.*, 618 F.2d 163 (2d Cir. 1980)………………………………19

*Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928 (Fed. Cir. 2003)…………………………………18

*Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734 (Fed. Cir. 1986)……………………………25

*Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008)………………………..9,10

*North American Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571 (Fed. Cir. 1993)…..24,25

*Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931 (Fed. Cir. 1990)…………………….16

*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005)………………………...10

*O'Reilly v. Morse*, 56 U.S. 62 (1853)……………………………………………………………24

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298 (Fed. Cir. 1999)…………………...11

*PolyAmerica, L.P. v. Lining Technology, Inc.*, 383 F.3d 1303 (Fed. Cir. 2004)………….11,12,28

*Renhcol Inc. v. Don Best Sports*, 548 F.Supp.2d 356 (E.D. Tex. 2008)…………………………10

*Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 112 F.3d 1163 (Fed. Cir. 1997)......................17

*Rowe v. Dror,* 112 F.3d 473 (Fed. Cir. 1997)...........................................................11

*Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304 (Fed. Cir. 2002)................................10

*Song v. Ives Labs., Inc*., 957 F.2d 1041 (2d Cir. 1992)...............................................19,29

*Standard Oil Company v. American Cyanamid Co*., 774 F.2d 448 (Fed. Cir. 1985)..............24

*Stewart Warner Co. v. City of Pontiac, Michigan*, 767 F.2d 1563 (Fed. Cir. 1985)...............24

*Sundance, Inc. et al. v. DeMonte Fabricating Ltd. et al.*, 550 F.3d 1356 (Fed. Cir. 2008)...passim

*Trading Technologies Int'l, Inc. v. ESpeed, Inc.*, 595 F.3d 1340 (Fed. Cir. 2010)..............17

*Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551 (Fed. Cir. 1994)..........17

*Trueposition, Inc. v. Andrew Corp.*, Civ. No. 05-747-SLR, 2007 U.S. Dist. LEXIS 62705
   (D. Del. 2007)..........................................................................................18

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167
   (Fed. Cir. 2002)....................................................................................10,12,13

*United States v. Adams,* 383 U.S. 39 (1966)..............................................................26

*Verizon Services Corp. et al. v. Cox Fibernet Virginia, Inc. et al.*, 602 F.3d 1325
   (Fed. Cir. 2010)........................................................................................23

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997)...................9,10

*Yale Lock Mfg. Co. v. Greenleaf,* 117 U.S. 554 (1886)................................................26

## STATUTES

35 U.S.C. § 102..........................................................................................12

35 U.S.C. § 103.......................................................................................13,24

35 U.S.C. § 112....................................................................................passim

35 U.S.C. § 282.....................................................................................10,28

Federal Rules of Civil Procedure 50...................................................................18,19

Federal Rules of Evidence 702....................................................................passim

## I.  INTRODUCTION

Plaintiff Joao Bock Transaction Systems, LLC ("Plaintiff" or "JBTS"), by and through its Attorneys, hereby responds to Defendant Jack Henry & Associates, Inc.'s ("Defendant" or "Jack Henry") *Post-Trial Memorandum Concerning the Judgment the Court Should Enter* ("Defendant's Memo").

Ray Joao and Bob Bock, co-inventors of the patent in suit, have never claimed to be "banking experts."[1]  Mr. Joao is a patent attorney with two degrees in electrical engineering.  Mr. Bock is a law enforcement officer.  In the mid-1990s, Mr. Bock noticed a dramatic rise in both cellphone and credit card fraud.  He asked his friend Mr. Joao if there was any way you could receive notice, perhaps on your cellphone or pager, when your credit card was used.  The two brainstormed, coming up with numerous ideas on security and notification regarding the use of credit cards, bank accounts, etc., that are described in the patent in suit.  Their continuing brainstorming has resulted in well over eight hundred issued patent claims and other pending applications.  A number of these patents, including the patent in suit, have been licensed by many of America's largest banks and credit card companies.

As the Court is aware, undersigned counsel did not represent Plaintiff at trial.  Trial counsel withdrew following the conclusion of that proceeding.  Plaintiff is further disadvantaged by the fact that a transcript of the trial is not yet available due to health issues of the court reporter.[2]  It is therefore virtually impossible for Plaintiff to respond to many of the assertions and allegations contained in Defendant's Memo.  Plaintiff reserves the right to supplement and/or revise this Memorandum as necessary following review of the full trial transcript.

---

[1] Given the near-meltdown of the financial services sector over the past few years, some would argue that the term "banking expert" is an oxymoron.

[2] A transcript for the last two days of trial has been provided to Plaintiff.  However, those days were devoted to closing arguments, jury instructions, etc., and provide little guidance regarding the issues raised in post-trial briefing.

One thing is quite clear from even the limited record however – neither party did a good job advising the Court on questions of patent law and procedure.  Improper testimony was entered into the record.  Improper arguments were advanced by counsel.  And improper interrogatories only served to further confuse a jury that appears to have been hopelessly confused.  In short, the Court will now have to step in and set aside the special jury verdict which could not possibly be sustained on appeal.

## II.     THE TRIAL TESTIMONY AND JURY INTERROGATORIES

Plaintiff originally filed an action for patent infringement of United States Patent No. 6,529,725 ("the '725 patent" or "the patent-in-suit") against Sleepy Hollow Bank on December 24, 2003[3] and later added Jack Henry as a Defendant on January 27, 2004.  The '725 patent, titled "Transaction Security Apparatus and Method" issued to Raymond Joao and Robert Bock on March 3, 2003.   Plaintiff's patent infringement claim was based on its assertion that Jack Henry's NetTeller online banking product, working in combination with its core banking products, infringed certain claims of the '725 patent.[4]

Specifically, in its second-amended complaint, Plaintiff alleged that Defendant has infringed and continues to infringe the claims of the '725 patent by "operating and maintaining an Internet website at http://www.sleepyhollowbank.com that permits customers of the Bank with checking accounts to 'Place Stop Payments' orders on checks *via* the Bank's website, all without leave or license granted by Plaintiffs" and by making and/or selling "one or more products and/or services to financial institutions, other than the Bank, that permit the customers of those institutions with checking accounts to place stop payments on checks *via* a website or

---

[3] Before trial the parties stipulated that Sleepy Hollow Bank could be and should be dismissed without prejudice, and therefore Sleepy Hollow Bank did not participate at the trial.
[4] The '725 patent contained 340 claims upon issuance.  By the time this case went to trial, Plaintiff narrowed its asserted claims against Defendant to claims 108, 109, 267, 280, 293, and 294.

over the Internet." (D.I. 42 at ¶¶ 21, 22). Plaintiff also alleged that Defendant infringed and continues to infringe the '725 patent by making and/or selling "one or more products and/or services to financial institutions that enable those institutions to transmit a signal or message, such as an email alert, to their respective customers, informing them when some type of banking transaction has taken place on their account, such as when an account is above or below a set limit or when a check clears." (*Id.* at ¶ 27).[5]

Trial began before a Jury on March 1, 2010. Defendant apparently called five live witnesses: Messrs. Nicholas, Henley, and Smith of Jack Henry, and two expert witnesses: Bill McFarland, who testified on non-infringement issues and John Fulton, who testified on invalidity issues. The testimony of Mr. Henley and Nicholas was permitted as fact testimony to inform the court and the jury of certain facts regarding the accused instrumentalities. Despite the fact that they were both fact witnesses, Mr. Nicholas also testified to the issue of invalidity – an issue requiring expert testimony.

Plaintiff called only one live witness at trial, Raymond Joao, a principal in JBTS and a co-inventor of the '725 patent. Mr. Joao was a fact witness and as such, could give factual testimony akin to the other fact witnesses, Mr. Henley and Mr. Smith. At trial, however, the Court also admitted and allowed expert testimony from Mr. Joao on the issues of validity and non-obviousness. Importantly, no qualifications analysis was performed by the Court in order to ensure that Mr. Joao qualified as an expert under F.R.E. 702 to testify to expert issues of invalidity on anticipation and obviousness. Testimony from Mr. Joao was permitted because, according to the Court,

> [H]e's the sole witness, and he was allowed … to give opinions.
> He's the plaintiff, he's allowed to give his opinions, and he did.

---

[5] Plaintiff also claimed that Defendants actively have induced and are continuing to induce infringement of the claims of the '725 patent (D.I. 42 at ¶¶ 23, 28).

(Ct. Tr. 9:14-17 (Mar. 15, 2010)).

However, at the end of the day after the testimony closed, the Judge addressed counsel for both parties and disallowed Mr. Joao's testimony, stating:

> And I felt that since he [Mr. Joao] was constantly saying he was a person of extraordinary skill in the arts, that he had to be an ordinary person in the arts, too; but I think my approach to that was not correct and I was going to see what the jury did in this case and then issue a final judgment in this case.  I think what I ought to do is let the jury have a crack at this, and I may decide not to set aside whatever they do if they find he's an ordinary person of skill in the arts.  (Ct. Tr. 8:10-18 (Mar. 15, 2010)).

Following the close of the evidence, the jury was instructed on the law and asked to complete a special verdict form consisting of seven (7) interrogatories.  Those interrogatories were: 1) whether or not Raymond Joao, Jon Henley, Joe Nicholas, and John Fulton are individuals having ordinary skill in the relevant art; 2) whether the preamble to claims 108 and 267 recite the essential structure of, give life, meaning or vitality to, or disclose a fundamental characteristic of the claims-in-suit or state the purpose or intended use of the claims-in-suit; 3) whether or not Plaintiff has proven by a preponderance of the evidence that Defendant directly infringes the claims of the '725 patent; 4) whether or not the Defendant has proven by clear and convincing evidence that the claims of the '725 patent are invalid because the claimed invention was not new as of August 8, 1996; 5) whether or not the Defendant has proven by clear and convincing evidence that the claims of the '725 patent are invalid as anticipated because the invention was first made or invented by someone else prior to August 8, 1996; 6) whether or not the Defendant has proven by clear and convincing evidence that the claims of the '725 patent are invalid because such claims failed to meet one of the statutory bars of the patent law; and 7) whether or not the Defendant has proven by clear and convincing evidence that the claims of the '725 patent are invalid because such claims were obvious as of August 8, 1996.  The Jury, after

4

deliberating more than six hours, answered the interrogatories in favor of Defendant.

For the reasons that follow, the Court should set aside the Jury's verdict and render a verdict in Plaintiff's favor on all counts.

With respect to the other factual allegations raised in Defendant's Memo, until the trial transcript is available, Plaintiff is unable to either confirm or deny their veracity.

### III.   LAW AND ARGUMENT

#### A.  Plaintiff Has Established Infringement By a Preponderance of Evidence

##### i.   Plaintiff Has Met Its Burden Of Proving Infringement Of Each Asserted Patent Claim

Plaintiff's expert, Raymond Joao, testified that each limitation of asserted claims 108, 109, 267, 280, 293 or 294 of the '725 patent are met in Defendant's system. Accordingly, Plaintiff has established, by a preponderance of the evidence, infringement of its patents. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997) ("[l]iteral infringement requires that every limitation of the patent claim be found in the accused infringing device."); *Creative Internet Adver. Corp. v. Yahoo! Inc.*, 2009 U.S. Dist. LEXIS 65669, *6 (E.D. Tex. July 30, 2009) ("[p]laintiff [has] the burden of proving infringement at trial by the preponderance of the evidence").

##### ii.  Defendant Did Not Rebut Plaintiff's Evidence Establishing Infringement

In particular, Mr. Joao also testified that each limitation of claims 108, 109, 267, 280, 293 or 294 of the '725 patent are met by the Defendant's NetTeller and Core Processing products. As discussed below, Defendant has not rebutted Plaintiff's evidence of infringement, and specifically Defendant has not rebutted Plaintiff's evidence of infringement by Defendant's NetTeller and Core Processing products.  With evidence of infringement unrebutted, Plaintiff is

entitled to judgment of infringement as a matter of law.  *See Cummins-Allison Corp. v. SBM Co.*, 2009 WL 4017160, *3-4, *7 (E.D. Tex. Nov. 13, 2009).

**a.      For Claim 108, the Jury Should Have Found That Plaintiff Has Proven That a Stop Payment Request Is A "Limitation Or Restriction" That "Prohibits The Use Of" Or "Prohibits A Withdrawal From" A Checking Account, and That the Jack Henry Product Includes Every Element of the Claimed Apparatus**

Defendant's arguments are nothing more than a failed attempt to bury its weak non-infringement positions beneath its fabricated invalidity arguments.  To Defendant's detriment, these arguments have only served to magnify the infringing capabilities of the Defendant's products and to prove Defendant's infringement of Plaintiff's patent.

Perhaps not meaning to, Defendant has proven that a "stop payment" meets the claim element "a limitation or restriction" for purposes of infringement through its own invalidity arguments.  For starters, Defendant points to the Fulton patent and the Cash Management product as invalidating the '725 Patent because they disclosed *inter alia* "a user inputting a stop payment."  (*Def. Mem.* at p. 15).  Furthermore, Defendant stated that "Defendant offered evidence that a stop payment request made through NetTeller was not a 'limitation or restriction' as that term was defined by a patent" and Plaintiff "[f]ailed to prove that a stop payment request is a limitation or restriction that prohibits use of or prohibits withdrawal from a checking account" thus, "claim 108 did not cover stop payment requests and … Jack Henry did not infringe claim 108."  *Id*.  Yet Defendant uses stop payments throughout the remainder of its Memorandum to argue that a stop payment meets the same claim element of "a limitation or restriction," thereby invalidating the patent.  For example, Defendant stated that "Cash Management … performed functions meeting all of the elements of claim 108, in that Cash Management allowed stop payment instructions to be sent from a user's PC to a bank's host

6

computer….." (*Id.* at p. 18). Defendant clouds the Court's record with inconsistencies, leaving an outcome-determinative question unanswered: why are the "stop payments" described in the Cash Management system invalidating over the claims of the '725 patent but the similarly functioning "stop payments" in the NetTeller system do not infringe the claims of the '725 patent?

It is impossible under the Patent Laws to win both these positions. Either the stop payment is "a limitation or restriction" as used in claim 108, or it is not. If the stop payment is a restriction, then the Defendant infringes the patent. Presumably, if the prior art truly disclosed a stop payment and all the remaining elements of the claim, then the prior art reference may be used to challenge the patent's validity. However, Defendant's argument that the stop payment did not qualify as "a limitation or restriction" to prove infringement, but did qualify as a limitation or restriction to prove invalidity, flies in the face of logic and is contrary to the Patent Laws. Defendant has not rebutted Plaintiff's evidence of infringement but instead has put forth inconsistent arguments with respect to whether a stop payment is "a limitation or restriction" throughout its Post Trial Memorandum. In light of Defendant's illogical and inconsistent non-infringement arguments and failed attempts to rebut Plaintiff's evidence, Plaintiff has established infringement of at least claim 108 of the '725 patent by a preponderance of evidence.

> **b.     For Claim 109, The Jury Should Have Found That Plaintiff Has Proven That Jack Henry's System Transmitted A Second Signal Containing Information Regarding The Banking Transaction**

Further inconsistent arguments exist in Defendant's brief with respect to the claim elements relating to the transmission or sending of signals (i.e., "alerts"). In Defendant's non-infringement argument, it wants this Court to believe that the sign-on alerts and email alerts are not transmitted to the user, but rather reside on the bank's web server or email server and "[t]he

sign-on alerts and/or email alerts are then 'pulled' by the user's web or email client to the user's PC for viewing."  (*Id*. at p. 9).  Defendant thus concludes that "[b]ecause 'transmit' does not mean 'pull,' Jack Henry does not meet this limitation of claim 9."  *Id.*

Defendant plays a game of semantics when it argues that the signals are not sent to the customer, but rather "pulled" by the customer's web or email client to the customer's personal computer for viewing.  *Id.*  However, using a very similar scenario to support its invalidity argument, Defendant disingenuously argues that a similar sequence of events invalidates the '725 patent because suddenly, in the Smart-Phone product, Defendant believes that the information is no longer passively waiting on a server for the customer to "pull" but rather, a customer uses a phone to initiate a connection with the bank to receive this information.   This scenario is unmistakably similar to the customer using the personal computer to initiate a connection with the bank.

To muddy the waters even more, the Defendant essentially equates the terms "pull" and "retrieve," at one point in its Memo stating "email alerts are not 'transmitted' to the user, but rather they are stored on an email server until the user's email client connects to the server and *retrieves or pulls* them from the email server."  (*Id*. at p. 12) (*emphasis added*).  A few pages later, the Defendant states "[t]he Smart-Phone product … allowed users to receive signals containing information about banking transactions in real time...."  (*Id*. at p. 21).  If the user is receiving or retrieving these alerts - doesn't it logically follow that the Defendant is transmitting them?  It is quite nonsensical why in the former instance (personal computer), the user "pulls" information, while in the latter instance (Smart-Phone), the user suddenly "receives" signals. (*Id*. at p. 21).  Clearly, Defendant's arguments lack common sense and common ground.

If the user receiving signals containing alerts/emails via his phone would invalidate the

8

'725 patent then it logically follows that the user receiving signals containing alerts/emails via the computer would infringe the '725 patent.  Defendant has not rebutted Plaintiff's evidence of infringement but instead has put forth inconsistent arguments with respect to whether a sign-on alert or email alert is transmitted to the customer or "pulled" by the customer throughout its Post Trial Memorandum.  In light of Defendant's illogical and inconsistent non-infringement arguments and failed attempts to rebut Plaintiff's evidence, Plaintiff has established infringement of at least claim 109 of the '725 patent by a preponderance of evidence.

### iii.   Defendant Did Not Rebut Plaintiff's Evidence Establishing Infringement Under The Doctrine Of Equivalent

Mr. Joao also testified that claims 267, 280, 293 and 294 of the '725 patent are infringed under the doctrine of equivalents. *See Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). Specifically, Plaintiff asserted that sending a message to a user's email server, as required by independent claim 267, is equivalent to sending a message to a user's personal computer.  (*Def. Mem.* at p. 9).  Defendant however, did not rebut this evidence at trial. Judgment of infringement for Plaintiff is therefore appropriate.

### iv.   Defendant's Multiple-Actor Argument Under *Muniauction* Fails As A Matter of Law

One of Defendant's principal non-infringement arguments is that it does not make or supply "the personal computer that a NetTeller user would use as a 'communication' device for the purposes of the claims in suit" and it does not have control over customers visiting a NetTeller website, therefore "[w]ithout evidence that Jack Henry's product incorporated or controlled each and every claim element in claim 108, the jury is entitled to find that Jack Henry did not infringe claim 108."  (*Id*. at p. 8).  Defendant's "multiple-actor" argument is based on the Federal Circuit cases *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008), and

*BMC Resources Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007). Defendant's argument fails as a matter of law as to the '725 patent because the asserted claims are system claims.

Direct infringement requires a party to perform or use each and every element of a claim. *See Warner–Jenkinson*, 520 U.S. at 17. In its *Muniauction* and *BMC* cases, the Federal Circuit specifically addressed infringement standards for *method* claims, holding that each step of a claimed method must be performed under the direction or control of one party. *Muniauction,* 532 F.3d at 1329 ("In *BMC Resources*, this court clarified the proper standard for whether a *method claim is directly infringed* by the combined actions of multiple parties." (emphasis added)); *BMC*, 498 F.3d at 1380-81.  By contrast, the Federal Circuit has expressly stated that the infringement analysis for use of claimed *systems*, such as those in Plaintiff's Motion, is "fundamentally different." *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005).

Under *NTP*, "an alleged infringer uses a claimed *system* when the alleged infringer exercises control over the *system* and obtains beneficial use of the *system*." *Renhcol Inc. v. Don Best Sports*, 548 F.Supp.2d 356, 360 (E.D. Tex. 2008) (Davis, J.) (emphasis added) (quoting *Civix-DDI, LLC v. Cellco P'ship*, 387 F.Supp.2d 869, 884 (N.D. Ill. 2005)). As Plaintiff's asserted patent claims of the '725 patent are all system claims, Defendant cannot, as a matter of law, avoid infringement under *Muniauction*.

### B.  Defendant Has Failed to Prove Invalidity by Clear and Convincing Evidence

"A patent shall be presumed valid."  35 U.S.C. § 282. Defendant bears the burden of proving invalidity by clear and convincing evidence. *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). Defendant having failed to offer clear and convincing evidence of invalidity, judgment is appropriate as a matter of law.  *See Union Carbide Chems. &*

*Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1188-89 (Fed. Cir. 2002).

### i.   The Preamble of Each of the Claims-in-Suit Is A Limitation

The Preamble of each of the asserted claims is, as a matter of law, a limitation or element of each of the asserted claims, and the Court erred in submitting that question to the Jury.  The preamble of the asserted claims is a substantive limitation or element of each claim because it discloses a fundamental characteristic of the claimed invention.

The preamble is the introductory statement that precedes the body of a patent claim. *Corning Glass Works v. Sumitomo Elec., U.S.A.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989).  Here, the preamble to claims 108 and 267 is "A transaction security apparatus…"  Whether or not to treat a preamble as a claim limitation or element can only be resolved by reviewing the entire patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim.  *Id.*  No litmus test defines when a claim preamble limits the scope of a claim.  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

On the one hand, a preamble is a claim limitation if it recites essential structure or steps, or if it is "necessary to give life, meaning and vitality" to the claim.  *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999).  On the other hand, a preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention."  *Rowe v. Dror,* 112 F.3d 473, 478 (Fed. Cir. 1997).  "Further, when reciting additional structure or steps underscored as important by the specification, the preamble may operate as a claim limitation."  *Catalina Mktg.*, 289 F.3d at 808.  *PolyAmerica, L.P. v. Lining Technology, Inc.*, 383 F.3d 1303, 1309-10 (Fed. Cir. 2004).

In sum, a preamble is a substantive limitation or element of a patent claim if if it discloses a

"fundamental characteristic of the claimed invention," as opposed to "a purpose or an intended use of the invention." *Id.* At 1310.  In *Poly-America*, the Federal Circuit affirmed the district court's conclusion, based on a review of the entirety of the patent in that case, that the preamble of the claim disclosed a fundamental characteristic of the claimed invention and was thus properly construed as a limitation or element of the claim itself. *Id.*  A thorough review of the '725 patent and the evidence at trial discloses overwhelmingly that the "fundamental characteristic of the claimed invention[s]" of the asserted claims-in-suit is "a transaction security apparatus."  Defendant provided no evidence to the contrary at trial.

In fact, Defendant previously admitted the importance of the terms "transaction" and "security" when it asked the Court to interpret these terms during the Markman proceeding. Clearly, Defendant (and Plaintiff) considered these terms as limitations.  At trial, Defendant sought to reverse course.  The reason is transparent – the prior art Defendant relied on for its invalidity arguments all dealt with "transactions," but none dealt with "security."

Claim interpretation, including a determination on the limiting effect of a preamble, is a question of law for the Court to decide.  It should never have been submitted to the jury.  The Jury's Verdict should therefore be set aside regarding this issue and a verdict should be rendered in favor of the Plaintiff.

### ii.  Defendant Has Presented No Sufficient Evidence Of Invalidity By An Anticipating Reference

Defendant contends that the patent-in-suit is anticipated by the prior art, and therefore invalid under 35 U.S.C. § 102. To succeed on its anticipation defense, Defendant must prove by clear and convincing evidence that every limitation of Plaintiff's asserted patent claims is contained, either expressly or inherently, in a *single prior art reference*. *See Union Carbide*, 308 F.3d at 1188 (citing *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374

(Fed. Cir. 2001)). "In other words, [Defendant bears] the burden of demonstrating that there were no differences between [Plaintiff's] claimed invention and at least one of [Defendant's] asserted prior art references." *Id.* Defendant's Post Trial Memo vaguely asserts that prior art references anticipate the '725 patent.  Importantly, Defendant has presented no evidence that any single prior art reference contains *each and every limitation* of Plaintiff's asserted patent claims, and judgment as a matter of law is therefore appropriately entered in Plaintiff's favor on Defendant's invalidity defense of anticipation. This issue should not go to the jury.  *Union Carbide*, 308 F.3d at 1188-89 (affirming grant of JMOL of no anticipation where none of the relevant references disclosed "every limitation of [the] asserted claims").  Defendant having failed to identify all claim limitations in the prior art, judgment as a matter of law on anticipation of these claims is clearly required.

### iii.   Defendant Has Presented No Sufficient Evidence Of Invalidity Based On Obviousness

Defendant also offered testimony directed to invalidity over combinations of references, apparently in an attempt to show invalidity under 35 U.S.C. § 103 despite one of its experts not being able to testify as to obviousness. To succeed on this obviousness defense, Defendant must prove by clear and convincing evidence that the teachings of the prior art would have suggested the claimed subject matter to one of ordinary skill in the art.  *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363 (Fed. Cir. 2008). However, none of the prior art references asserted by Defendant, individually or in combination, teach or suggest the inventions of the patent-in-suit, and therefore cannot support Defendant's invalidity defense.  Defendant's expert, Mr. Fulton, did not provide any detailed opinions on obviousness.  He did not conduct a proper *Graham* analysis. Whether a reference allegedly "matches up" with claim elements is not the test for obviousness.  Mr. Fulton did not testify to any reason to combine Defendant's asserted prior art

references, nor did he analyze additional (secondary) considerations of non-obviousness.  Absent

such evidence, Defendant's invalidity defense under section 103 fails as a matter of law.  *See*

*Innogenetics*, 512 F.3d at 1373-74 (affirming the preclusion of "vague and conclusory

obviousness testimony" of an invalidity expert where his proffered testimony was insufficient to

prove obviousness as a matter of law since "'there must be some articulated reasoning with some

rational underpinning to support the legal conclusion of obviousness.'  *In re Kahn*, 441 F.3d 977,

988 (Fed. Cir. 2006); *see also KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1741, 167 L. Ed. 2d

705 (2007) ('To facilitate review, this analysis should be made explicit.')").

### iv.  Defendant Has Not Presented Clear And Convincing Evidence That The '725 Patent Is Invalid Based On Priority Date

The extensive debate before the Court at trial as to whether or not the claims of the '725

Patent were entitled to the priority date of the parent patent was improper and undoubtedly

confused the jury.  The Patent Office Rules and Regulations are very clear as to how the priority

date for claims is to be calculated.

Defendant contends that certain claims of the '725 patent are invalid because they are not

entitled to the priority date of its parent patent application, U.S. Patent Application No.

08/694,199 ("the '199 application"), and are therefore invalid over prior art that post-dates the

filing date of the '199 application (August 8, 1996), but pre-dates the filing date of the '725

patent application (October 9, 1998).  Specifically, Defendant contends that the '725 patent is not

entitled to the earlier priority date because the '199 application specification does not meet the

enablement, written description, and best mode requirements of 35 U.S.C. § 112.  A continuation

patent is presumptively entitled to the priority date of its parent, and Defendant bears the burden

of proving that the '725 patent is not entitled to the earlier priority date by clear and convincing

evidence. *See Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1369-72 (Fed. Cir.

2009). Defendant's expert did not testify on any section 112 issues at trial. Defendant has not

met its burden on this issue and there was no basis for the jury to find that claims 108 and 267

were invalid for failing "to meet one of the statutory bars in the patent law" – whatever that

means.

### a.  Defendant Cannot Meet Its Clear And Convincing Burden With Documents Alone

Defendant has submitted no testimony – including no expert testimony – on the issue of

whether the '725 patent is entitled to the earlier priority date of the '199 application.  Instead,

Defendant relies exclusively on documents and, apparently, later attorney argument during

closing.  But the Federal Circuit has consistently held that complex patent and technical issues

require supporting explanatory expert testimony before they can be properly submitted to the

jury.  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1300 (Fed. Cir. 2009)

(explaining that specific claim limitations *must* not only be disclosed in a reference submitted

into evidence, but the party asserting invalidity bears the "burden to clearly disclose, discuss, and

identify for the jury the supporting evidence upon which it was relying to prove that the claim

limitation was present in the prior art");  *Centricut, LLC v. The Esab Group, Inc.*, 390 F.3d 1361,

1370 (Fed. Cir. 2004) ("[I]n a case involving complex technology … the patentee cannot satisfy

its burden of proof by relying only on testimony from those who are admittedly not expert in the

field."); *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1151-52 (Fed. Cir. 2004)

(explaining that "General and conclusory testimony," such as that provided by Mr. Fulton in this

case, "does not suffice as substantial evidence of invalidity. … *This is so even when the*

*reference has been submitted into evidence before the jury*.") (emphasis added); *Hearing*

*Components, Inc. v. Shure, Inc.*, Civil Action No. 9:07-CV-104, 2009 WL 593836, at * 3 (E.D.

Tex. Mar. 6, 2009) (finding it disingenuous for counsel to rely on portions of a document not

addressed by expert witness testimony to prove invalidity, and that "[d]istrict judges have long been counseled to avoid such absurdities, especially in complicated cases …").  Supporting expert testimony is also necessarily required here, where the jury is called upon to determine whether a patent meets the disclosure requirements of 35 U.S.C. § 112, discussed in detail below. Absent such testimony, Defendant has not met its burden of proof on invalidity, and judgment in Plaintiff's favor is appropriate.

> **b. Defendant Has Failed To Prove Invalidity Based On A Failure To Meet The Disclosure Requirements Of 35 U.S.C. § 112**

Even if documents were enough, Defendant has also not met its burden of presenting clear and convincing evidence that the '199 application specification does not meet section 112's enablement, written description, and best mode requirements sufficient to support the '725 patent claims. A "decision on the issue of enablement requires determination of whether a person skilled in the pertinent art, using the knowledge available to such a person and the disclosure in the patent document, could make and use the invention without undue experimentation." *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990). Likewise, analysis of whether section 112's written description has been met is made in the context of one skilled in relevant art:  for software-related inventions, "[d]isclosing . . . function[ality] is sufficient to satisfy the requirement of section 112, first paragraph, when one skilled in the relevant art would understand what is intended and know how to carry it out."  *In re Hayes Microcomputer Prods. Patent Litig.*, 982 F.2d 1527, 1534 (Fed. Cir. 1992).

Defendant has presented *no* evidence that a person of ordinary skill in the art would not have been able to make and use the inventions claimed in the '725 patent, or to understand what is intended and know how to carry it out, based on the disclosure in the '199 application

specification.  "Without any basis in th[e] record to determine that one of skill in the art could not make and use [the patented invention] with th[e] disclosure," a nonenablement conclusion, or determination that the written description requirement has not been met, cannot be sustained. *See Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1375 (Fed. Cir. 2005); *see also Trading Technologies Int'l, Inc. v. ESpeed, Inc.*, 595 F.3d 1340, 1360-61 (Fed. Cir. 2010).

Defendant has also failed to meet its clear and convincing evidentiary burden with regard to the best mode requirement of § 112.  Whether the best mode request is satisfied is a two pronged test, consisting of a subjective element and an objective element: (1) whether the inventor, at the time of filing the patent application, had contemplated a best mode for practicing the claimed invention and (2) whether the inventor's subjective best mode was not disclosed in sufficient detail to enable a person of ordinary skill in the art to practice it.  *See Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 112 F.3d 1163, 1165 (Fed. Cir. 1997). The subjective prong of the best mode analysis for the '725 patent relates to the inventors' understanding of the best mode of the invention at the time the '199 parent application was filed.  *See Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 558-59 (Fed. Cir. 1994). Defendant did nothing to meet its clear and convincing burden to prove invalidity of the '725 patent based on a failure to meet the disclosure requirements of 35 U.S.C. § 112, judgment in Plaintiff's favor is appropriate.

### v.  Defendant Cannot Prove Invalidity Based On The Expert Testimony of John Fulton

The expert testimony presented by Defendant's expert witness Mr. Fulton is entitled to no weight because Mr. Fulton: (a) did not address every element of the claims on an element by element basis; and (b) failed to apply this Court's claim constructions to all construed terms. To be sufficient evidence of invalidity, expert testimony must address the asserted patent claims on an element by element basis.  *See Koito Mfg.*, 381 F.3d at 1152 (explaining that "testimony

17

concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory... General and conclusory testimony...does not suffice as substantial evidence of invalidity.") (internal citations omitted)*; see also Hearing Components,* 2008 U.S. Dist. LEXIS 109142 (precluding testimony of an invalidity expert who, like Mr. Fulton, did not perform an in-depth analysis on the validity of the asserted claims).  Mr. Fulton did not do so in his expert testimony; as discussed above, Mr. Fulton's invalidity arguments were overly broad and vague, failing to address the specific claim elements on an element by element basis.  Mr. Fulton's testimony is properly disregarded for this reason.  *Id.*  Further, an expert giving opinion testimony with respect to either validity or infringement *must* apply the Court's claim interpretation.  *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc); *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003).  Fulton did not. Fulton's failure to apply the Court's claim constructions renders his testimony completely unreliable.  Defendant cannot therefore prove invalidity based on Fulton's expert testimony.  *See Trueposition, Inc. v. Andrew Corp.*, Civ. No. 05-747-SLR, 2007 U.S. Dist. LEXIS 62705, *3 (D. Del. 2007) (excluding testimony of an invalidity expert in part because he "failed to construe the limitations…[o]r refer to the claim construction of others").

### C.  The Jury Verdict Cannot Stand Because It Is Inconsistent and Contradictory

"Under Rule 50(a)(1), Fed. R. Civ. P., judgment as a matter of law is proper only when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.' ***A jury verdict should be set aside only where there is 'such a complete absence of evidence supporting the verdict that the jury's findings***

18

***could only have been the result of sheer surmise and conjecture***, or . . . such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.'" *Kosmynka v. Polaris Industries, Inc*., 462 F.3d 74, 79 (2d Cir. 2006) (citing *Song v. Ives Labs., Inc*., 957 F.2d 1041, 1046 (2d Cir. 1992) (ellipsis in original) (quoting *Mattivi v. S. African Marine Corp*., 618 F.2d 163, 168 (2d Cir. 1980)) (emphasis added).

Defendant's Post Trial Memo, apparently like its argument at trial, is premised upon conflicting legal arguments and conflicted factual assertions.

### i. The Jury's Answers to Interrogatories III and IV Are Evidence of Inconsistent Findings and Jury Confusion

Here, because Defendant's invalidity and non-infringement arguments were premised on the same system(s), it is a maxim of patent law that a system which infringes if later, invalidates if earlier.  Therefore, if a stop payment in the prior art references invalidated the '725 patent, then a stop payment in the accused instrumentality – NetTeller – would also infringe the '725 patent.  The Jury's response to Interrogatory III was for no infringement.  Based on Defendant's statement, it is reasonable to assume that the Jury, in finding no infringement, found that a stop payment was not "a limitation or restriction" as required by the asserted claims.



(*Jury Verdict Form* at p. 2).  The Jury also found in favor of Defendant with respect to

19

Interrogatory IV, in concluding that all of the asserted claims of the '725 patent are invalid

because the invention was not new as of the filing date.



(*Jury Verdict Form*, p. 2).  Because Jury Interrogatory III (infringement) and IV (invalidity) are

overly broad and vague, there is no basis or possibility for the Court to understand precisely the

reasons behind the Jury's findings.  Defendant advanced multiple, inconsistent arguments as a

possible basis for the Jury's Answers to Interrogatory Nos. III and IV. Since the result, i.e., both

invalidity and non-infringement, cannot be supported by the evidence, it is clear that the jury was

confused.

### D.  Improper Testimony Was Heard by the Jury

#### i.  Jury Interrogatory I Was Improper

"Under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), and

Rule 702, courts are charged with a "gatekeeping role," the objective of which is to ensure that

expert testimony admitted into evidence is both reliable and relevant."  *Sundance, Inc. et al. v.

DeMonte Fabricating Ltd. et al.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008) (citing *Kumho Tire Co. v.

Carmichael*, 526 U.S. 137, 149 (1999) (holding that Rule 702 applies not only to "scientific"

testimony, but to all expert testimony).  "Patent cases, like all other cases, are governed by Rule

702. There is, of course, no basis for carving out a special rule as to experts in patent cases." *Id.*

Federal Rule of Evidence 702 provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts.

The "[a]dmission of expert testimony is within the discretion of the trial court." *Id.* (quoting *Acoustical Design, Inc. v. Control Elecs. Co.,* 932 F.2d 939, 942 (Fed. Cir. 1991)). The court, in its role as gatekeeper, must exclude expert testimony that is not reliable and not specialized, and which invades the province of the jury to find facts and that of the court to make ultimate legal conclusions. *Sundance*, 550 F.3d at 1364. "Allowing a patent law expert without any technical expertise to testify on the issues of infringement and validity amounts to nothing more than advocacy from the witness stand." *Id.* at 1364-1365. In the instant case, the Court was poorly served by whichever party suggested Interrogatory I. The Court, not the jury, decides who qualifies as an expert. It was inappropriate, and highly prejudicial, to ask the jury whether a witness whose testimony was ***already provided to the jury in court*** was sufficiently qualified as an expert and specifically, whether he was qualified as a person of ordinary skill in the pertinent art. It was the province of the judge in his role as gatekeeper to make that determination and include allowable factual testimony while excluding improper expert testimony. Instead, the jury was forced to rule off Mr. Joao's bona fide as an expert. In deciding against his qualifications as a banking expert, the jury undoubtedly was driven to discount or ignore all of Mr. Joao's proper testimony as well. Submission of this question to the Jury was error and is proper foundation for reversing the jury verdict.

21

Along this same analysis, "expert testimony **should be excluded if it will not assist the trier of fact** according to the mandate for admissibility of expert testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579*, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)* and *Rule 702 of the Federal Rules of Evidence.*"  *Advanced Tech. Incubator, Inc. v. Sharp Corp. et al.,* 2010 U.S. Dist. LEXIS 30832, *5 (E.D. Tex. Mar. 22, 2010).  (Emphasis added.)  Prior to admitting expert testimony, "the proponent of the testimony must do more than establish that the expert is qualified in the area of expertise at issue." *Id.* The proponent of expert testimony must demonstrate: (1) the expert's testimony is relevant; (2) the expert's testimony is based on reliable principles, methodologies and foundational date; and (3) the expert's testimony is otherwise admissible. *Id. (citing Daubert.,* 509 U.S. at 590-95 (additional citations omitted).

Put simply, Mr. Joao's level of skill should not have been an issue in the case.  Making it an issue, and submitting the question to the Jury only served to prejudice Plaintiff and unfairly call into question the credibility of its only witness, Mr. Joao.  Mr. Joao correctly and honestly maintained, throughout the course of this six-plus year litigation, and throughout the trial, that as an inventor, he is a person of extraordinary (not ordinary) skill.  Defendant attempts to paint Mr. Joao as a person having no credentials or qualifications to speak as an inventor about the '725 Patent and its infringement and its validity, despite the fact that he holds two degrees in Electrical Engineering, is a registered Patent Attorney for over seventeen (17) years, and is a co-inventor of the '725 Patent and over eight hundred other issued patent claims and other pending applications.

I.    **Ordinary Skill in the Art**

    A.    Do you find the following individuals to have ordinary skill in the relevant art?

      1.    Raymond Joao    Yes_____    No\_\_✓\_\_\_\_\_

      2.    Jon Henley    Yes\_\_✓\_\_\_\_\_    No_____

      3.    Joe Nicholas    Yes\_\_✓\_\_\_\_\_    No_____

      4.    John Fulton    Yes\_\_✓\_\_\_\_\_    No_____

Of course, Mr. Joao's expertise with his own patents does not necessarily make him one of skill in the art.  The Court improperly admitted and allowed expert testimony from Mr. Joao on the issues of validity and non-obviousness without performing the F.R.E. 702 analysis.  Mr. Joao testified on the conclusions of the Defendant's experts regarding anticipation and obviousness. This should not have happened.  Even Defendant would agree that Mr. Joao did not establish that he was qualified to render expert opinion.  (*Def. Mem.* at p. 10).  Allowing Mr. Joao's opinions before the Jury as expert testimony on these issues was reversible error.  *See e.g., Verizon Services Corp. et al. v. Cox Fibernet Virginia, Inc. et al.*, 602 F.3d 1325, 1339-40 (Fed. Cir. 2010).

Plaintiff offered Mr. Joao as its one and only witness.  It would be a great disservice to the courts and entirely unjust to initially permit Mr. Joao's testimony upon which Plaintiffs fully relied, only to later allow the Jury to conclude that Mr. Joao was not qualified to testify to expert issues of invalidity.  Further, the Jury's interrogatory on this issue included an incomplete list of witnesses which raises a question as to who created this list and how this list was created.  Jury interrogatory I asked the Jury to determine whether Raymond Joao, Jon Henley, Joe Nicholas and John Fulton were persons of ordinary skill in the relevant art.  Mr. Joao and Mr. Fulton are each inventors and owners of patents, and are, therefore, persons of more than ordinary skill in their respective fields of inventorship.  Mr. Henley and Mr. Nicholas are employees of Defendant Jack Henry & Associates, Inc.  The testimony of Mr. Henley and Nicholas was

permitted as fact testimony to inform the court and the jury of certain facts regarding the accused instrumentalities.  Despite that they were both fact witnesses, Mr. Nicholas testified to the issue of invalidity – an issue requiring expert testimony.

Finally, it is unclear why Defendant's other expert witness, Bill McFarland, was not included in the interrogatory submitted to the Jury.  Mr. McFarland testified to banking operations and procedures for clearing checks and stopping payments on checks.  Mr. Fulton, the Defendant's other expert, testified to the issues of invalidity.  It is contradictory and improper to submit to the Jury the question of whether or not Mr. Fulton is a person of ordinary skill in the art, while failing to submit the same question for Mr. McFarland.  Both these individuals were presented as experts.  As experts, the Court needed to conduct a full analysis as to whether these individuals were qualified to testify under F.R.E. 702.

The select and biased combination of two fact witnesses, one expert witness and Plaintiff in the Jury Interrogatory I was clearly biased and prejudicial to Plaintiff's case.  But most importantly, it was simply improper to let Mr. Joao testify broadly and then pull the rug out from under him selectively.

### ii. Testimony from Raymond Joao on Issues of Validity and Infringement Was Improper

An inventor is an individual with a higher level of skill and knowledge than the ordinary person.  An inventor uses that skill to create and invent something new.  *O'Reilly v. Morse*, 56 U.S. 62, 111 (1853).  The courts recognize inventors as having a skill level which is higher than those of ordinary skill.  Inventors, as a class, possess something which sets them apart from the workers of ordinary skill, and one should not go about determining obviousness under § 103 by inquiring into what patentees (i.e., inventors) would have known or would likely have done, faced with the revelations of references.  *Standard Oil Company v. American Cyanamid Co.*,

24

774 F.2d 448, 454 (Fed. Cir. 1985) (emphasis in original). *See also, Kloster Speedsteel AB v. Crucible Inc*., 793 F.2d 1565, 1574 (Fed. Cir. 1986) (extraordinary skill level described as the level of skill of other inventors in the art); *Stewart Warner Co. v. City of Pontiac, Michigan*, 767 F.2d 1563, 1570 (Fed. Cir. 1985) (skill level of inventors may be extraordinary); *North American Vaccine, Inc. v. American Cyanamid Co*., 7 F.3d 1571, 1580 (Fed. Cir. 1993) (Rader dissent) ("[*b]ecause inventors generally have extraordinary skill*, their scientific writings outside the patent are rarely even a source of knowledge about ordinary skill in the art." (Emphasis added)).

Where the patent expert is not a person ordinarily skilled in the art, his opinion is "not evidence entitled to any weight in resolving the issue." *Sundance*, 550 F.3d at 1364.  A "witness who is not qualified in the pertinent art may not testify as an expert as to anticipation, or any of the underlying questions, such as the nature of the claimed invention, what a prior art references discloses, or whether the asserted claims read on the prior art reference." *Id*.  (citing *Acoustical Design, 932 F.2d at* 942).  "Nor may a witness not qualified in the pertinent art testify as an expert on obviousness, or any of the underlying technical questions, such as the nature of the claimed invention, the scope and content of prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention." *Id*. (citing *Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734, 741 (Fed. Cir. 1986); *In re Deters,* 515 F.2d 1152, 1155 (CCPA 1975) (rejecting patent expert testimony on non-obviousness where patent expert was not a person ordinarily skilled in the art and thus his opinion was "not evidence entitled to any weight in resolving the issue")).

It is unclear what case law the Court was referring to when it stated:

> [W]e had a couple of experts testify in the case.  They're the only people who are allowed to give opinions.  To some extent, people such as Plaintiff do not have to be identified as expert witnesses but may be allowed to give opinions.  (Ct. Tr. 15:20-24 (Mar. 16,

25

2010)).

Mr. Joao is an inventor having extraordinary skill in the art as it relates to his inventions. But he is not qualified to speak on issues of invalidity and/or infringement because he is admittedly not a person having ordinary skill in the banking arts.

### iii.  Jury Interrogatory II  Was Improper

"Before determining whether an accused device or process infringes, ***a court must first construe the claim language*** to determine the meaning and scope of the claims." *Catalina Marketing*, 289 F.3d at 807 (citing *Cybor,* 138 F.3d at 1454).  (Emphasis added.)  "Claim construction is a question of law, which this court reviews without deference."  *Id.* (discussing the district court's construction of the preamble).

The following tenets of claim construction are adhered to by the courts in approaching the claim construction analysis.  "First, and most importantly, the language of the claim defines the scope of the protected invention." *Yale Lock Mfg. Co. v. Greenleaf,* 117 U.S. 554, 559 (1886); *Autogiro Co. of Am. v. United States,* 384 F.2d 391, 396 (Ct. Cl. 1967) ("Courts can neither broaden nor narrow the claims to give the patentee something different than what he set forth [in the claim].").  *Bell Communications Research, Inc. v. Vitalink Communications Corp*., 55 F.3d 615, 619-620 (Fed. Cir. 1995).  "Second, it is equally "fundamental that claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention." *United States v. Adams,* 383 U.S. 39, 49 (1966). *See also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) ("Claims must be read in view of the specification, of which they are a part. . . . For claim construction purposes, the [specification's] description may act as a sort of dictionary, which explains the invention and may define terms used in the claims.")."  *Bell Communications*, 55 F.3d at 620.

> ***We construe claim preambles, like all other claim language,
> consistently with these principles***. Much ink has, of course, been
> consumed in debates regarding when and to what extent claim
> preambles limit the scope of the claims in which they appear.

*Id*. at 620 (additional citations omitted).  (Emphasis added).

Clearly, interpretation of the preambles was a question of law for the Court to decide.

Without the full transcript it is impossible to tell, but it appears the Court may have been swayed

by incorrect Defendant argument:

> I read …Mr. Fried's presentation on why the preamble that Claims
> 108 and 267 is a subsequent limitation on each claim, and it
> appeared to me reading his cases that that certainly is a question
> for the jury, because the law seems to vary on how significant the
> preamble is to the text of the patent.  (Ct. Tr. 3:3-9 (Mar. 15,
> 2010)).

The Court went on to present a question to the jury – what ultimately became

Interrogatory II:

> I think what we need is a question to the jury as to the effect of this
> preamble as to whether or not it's a limitation or just an
> introduction to get you oriented as to what the patent is going to be
> about without being a restriction.  Does it provide a statement of
> the purpose or intended use or is it a restriction or a limitation.
> That's a good question for the jury to give us some guidance on.
> (Ct. Tr. 3:25-4:7 (Mar. 15, 2010)).

As drafted, Interrogatory II is both vague and confusing:



These alternatives are not mutually exclusive.  Requesting the jury to make a claim

construction determination of the preamble to claims 108 and 267 of the '725 patent was

improper and serves as a sufficient basis for the jury verdict to be set aside.

In light of the Judge's submission of the preamble question to the Jury, we presume that

the Jury also heard testimony regarding claim construction.  The admission of testimony on

claim construction before the Jury would be erroneous and is reversible error.  *Sundance*, 550

F.3d at 1364 ("We note, however, that our court has held that allowing a witness to testify *before*

*the jury* on claim construction would be improper. *See Cytologix Corp. v. Ventana Med. Sys.,*

*Inc.,* 424 F.3d 1168, 1172 (Fed. Cir. 2005) (noting that "[t]he risk of confusing the jury is high

when experts opine on claim construction" before the jury); *see also Endress + Hauser, Inc. v.*

*Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997).").  Further, the Court,

in providing the issue of the preamble to the Jury further erred by not instructing the Jury on the

law as set forth by the Court of Appeals for the Federal Circuit in *Poly-America,* 383 F.3d at

1309-10.

In short, the jury was given little guidance for a task it should not have performed.

### E.  Presumptions In Plaintiff's Favor Were Disregarded

During trial, Defendant improperly argued before the jury that the Applicants misled the

Patent Office by submitting an overload of materials during the prosecution of the '725 patent in

order to make it impossible for the Patent Office to conduct a proper examination.  Defendant

further argued improperly that the Patent Office was not able to do its job properly in examining

the '725 patent because of the materials that Applicants submitted pursuant to MPEP 2000.  This

line of argument is contrary to the Patent Laws and Regulation and should never have been

presented before the jury.  The Patent Office is presumed to have conducted its evaluation

properly and presenting this issue to the Jury only served to further prejudice the Plaintiff.  A

patent is presumed valid. 35 U.S.C. § 282.  Furthermore, a Patent Examiner is presumed to have performed his duties in an appropriate manner.  *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.* 725 F.2d 1350, 1359 (Fed. Cir.1984).

A core element of patent prosecution in this country requires an applicant to submit any and all information that would be deemed material to the patent application. In fact, an applicant and his attorneys are required to do so.  This ***duty*** is placed upon all applicants, inventors, or attorneys involved in the patent application process, to submit material facts and references to the Patent Office during the prosecution of a patent application.  (MPEP 2000).  Failure to submit this information to the Patent Office is taken very seriously and can be held against a patent applicant, causing the applicant to defend himself against allegations of inequitable conduct, and be subjected to the punishment of MPEP 2016, which requires the Patent Office or a court of competent jurisdiction to declare the patent invalid because of the applicant's inequitable conduct.

In this case, Applicants submitted all information deemed to be material to the patent application that issued as the '725 patent in accordance with their duty of candor and disclosure to the Patent Office.  Defendant's arguments to the contrary are without merit and therefore, should be disregarded.

## IV.    CONCLUSION

Plaintiff respectfully requests that the Court set aside the Special Jury Verdict and find for Plaintiff on the issues of validity and infringement, or in the alternative for a new trial.  *Song*, 957 F.2d at 1046.

Dated: White Plains, New York
July 16, 2010

GOLDBERG SEGALLA, LLP

by:   /s/ Frank J. Ciano
Frank J. Ciano, Esq. (FC 4981)
*Attorneys for Plaintiff*
*JOAO BOCK TRANSACTION*
*SYSTEMS LLC*
11 Martine Ave., Ste. 705
White Plains, NY  10606-1934
fciano@goldbergsegalla.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2010, I electronically transmitted *PLAINTIFF'S POST-TRIAL MEMORANDUM* to the Clerk of the Southern District Court using its CM/ECF system for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following CM/ECF registrants:

Russell S. Jones, Jr.
Richard P. Stitt
POLSINELLI SHUGHART PC
120 W. 12th Street, Suite 1700
Kansas City, MO 64105
Tel.:  (816) 421 3355
Fax.: (816) 374-0509
rjones@polsinelli.com
rstitt@polsinelli.com

SONNENSCHEIN, NATH & ROSENTHAL
Patrick Fitzmaurice (PF 8648)
1221 Avenue of the Americas
New York, NY 10020-1089
Fax.:  (212) 768-6800
Fitzmaurice@sonnenschein.com
**Attorneys for Defendant**
**Jack Henry & Associates, Inc.**

　/s/ Frank J. Ciano　　　　　
Frank J. Ciano, Esq. (FC 4981)